IN THE COURT OF COMMON PLEAS
OF GUERNSEY COUNTY, OHIO

JOHN URDAK
11224 PLEASANT ROAD
PLEASANT CITY, OHIO 43772

    Plaintiff,

vs.

BOARD OF EDUCATION FOR
ROLLING HILLS LOCAL
SCHOOL DISTRICT
60851 SOUTHGATE ROAD
CAMBRIDGE, OHIO 43725

and

RYAN CALDWELL,
SUPERINTENDENT
60851 SOUTHGATE ROAD
CAMBRIDGE, OHIO 43725

and

JOHN DOES 1-5
UNKNOWN PARTIES

    Defendants.

CASE NO: 16CV446

JUDGE: DAVID A. ELLWOOD




### VERIFIED COMPLAINT
### WITH MOTION FOR PRELIMINARY INJUNCTION
### TO ENJOIN DEFENDANTS' SUSPENSION OF PLAINTIFF
### FROM SCHOOL EVENTS

    Now comes Plaintiff John Urdak, by and through counsel, and for his Complaint against Defendant Board of Education for Rolling Hills Local School District, states as follows:

### INTRODUCTORY STATEMENT

1. John Urdak is bringing this suit to have the Board's dangling suspension, indefinitely prohibiting him from attending school activities, namely sporting events, declared void and unenforceable.

## JURSIDCTION AND PARTIES

2. Plaintiff John Urdak is an individual with a residence located at 11224 Pleasant Road, Pleasant City, Ohio 43772.

3. Defendant Board of Education for Rolling Hills Local School District (the "Board of Education" or "Board") is a political subdivision of the State of Ohio that can sue and be sued in its own name. Defendant operates, governs, and is responsible for the operation of Meadowbrook High School, Meadowbrook Middle School, Brook Intermediate School, Byesville Elementary School, and Secrest Elementary School.

4. Defendant Ryan Caldwell is the Superintendent of Rolling Hills Local School District and is sued in his official capacity. He is responsible for the policies, practices, and customs of the School District. The Superintendent also directs the hiring, screening, training, retention, supervision, discipline, counseling, and control of the School District's teachers and staff. He is charged with the oversight of the School District and its compliance with state and federal laws regarding the education of its students (collectively, with the Board of Education and John Does 1-5, "Defendants")

5. This Court has jurisdiction over the claims set forth in this Action under Ohio Revised Code § 2305.01.

6. Venue is proper in this Court pursuant to Rule 3(B)(2), (3), and (6) of the Ohio Rules of Civil Procedure, since Defendants are located in Guernsey County, Ohio, and the acts giving rise to the claims in this Action occurred in Guernsey County, Ohio.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff lives in the Rolling Hills Local School District.

8. Plaintiff is married to Lisa Urdak and has two sons who attend Meadowbrook High School. Wyatt Urdak is a junior and Wade Urdak is a senior. Wyatt and Wade participate in various school activities, including baseball, football, and basketball.

9. The School District has a 2016-2017 handbook called *Parent/Guardian/Spectator Athletic Expectations* (the "Handbook"). See attached Exhibit A.

10. The Handbook provides for a "Five Strike Policy" for "major violations of…expectations at sport events", which include but are not limited to, aggressive confrontations of a coach, being ejected or escorted from a sporting event, or "any action reasonably deemed to be detrimental by a school administrator."

11. For each "strike" received, a parent/guardian/spectator faces a consequence. For the 1st strike, for example, a parent must complete the online course "Positive Sport Parenting" and provide a certificate of completion to the School. For the 2nd strike, there is a two week suspension from home athletic events; for the 3rd strike, there is a three month suspension; for the 4th strike, there is a one year suspension; and for the 5th strike, there is a permanent suspension.

12. The Handbook does not provide for an indefinite suspension, except for the 1st strike, where a parent has yet to complete the Positive Sport Parenting course.

13. Prior to this legal dispute, Plaintiff never received a copy of the Handbook.

14. Plaintiff has never been told or received any writing stating he received any "strikes" under the Handbook.

## The Board's Violation of Ohio's Sunshine Laws

15. On June 30, 2016, the Board of Education conducted a regular meeting, which Plaintiff and his wife attended. At the conclusion of that meeting, the Superintendent stated that the Board was going into an executive session.

16. During the illegal executive session, the Board voted to prohibit Plaintiff from attending any further school activities, including sporting events, prohibited from Rolling Hills Property.

17. During the June 30th meeting and executive session, Plaintiff and his wife did not utter a word, much less disrupt the proceedings, even during public participation.

18. Subsequently, the Board sent a letter to Plaintiff, dated June 30, 2016, stating that Plaintiff was being prohibited from attending any further school activities, including sporting events, "for the indefinite future" due to alleged "ongoing belligerent and inappropriate conduct." See attached Exhibit B.

19. The last sentence of the June 30th letter states, "This ban will remain in place until we can credibly be assured that your propensity toward profane outbursts and attacks on others has been curbed and that you can, and will, maintain basic courtesy and civility towards school authorities on a regular and sustained basis."

20. The June 30th letter was signed by the Board President Brian Stoney, Board Vice President Darlene Miser, and Board Members, Tam Kenworthy, Cheryl Gadd, and Karen Wiggins.

21. On July 27, 2016, the undersigned sent a letter to the Board notifying the Board that it had conducted an illegal executive session on June 30th and demanding that it withdraw the June 30th letter to Plaintiff.

22. On August 5, 2016, Board Treasurer Kandi Raach sent a letter to Plaintiff stating that the Board conducted a meeting on August 4, 2016, and at that meeting voted to rescind and withdraw the June 30th letter approved at the illegal executive session. See attached Exhibit C.

## The Indefinite Suspension

23. On August 12, 2016, the Board sent another letter to Plaintiff stating that Plaintiff was being prohibited from attending any further school activities on school property, including sporting events, "for the indefinite future" due to alleged "ongoing belligerent and inappropriate conduct." See attached Exhibit D.

24. Like the June 30th letter, the August 12th letter concluded by stating, "This ban will remain in place until we can credibly be assured that your propensity toward profane outbursts and attacks on others has been curbed and that you can, and will, maintain basic courtesy and civility towards school authorities on a regular and sustained basis."

25. The August 12th letter was signed by Superintendent Ryan Caldwell and Board President Brian Stoney.

26. The August 12th letter does not say that Plaintiff received any "strikes" under the Handbook, much less five strikes.

27. Because of the ban, Plaintiff was unable to attend any Homecoming activities involving his son, Wade, who was selected to be on the Meadowbrook High School Homecoming Court for 2016-2017, including a Homecoming Parade in Byesville on September 30, 2016, followed by a pre-game ceremony at the

football field. He also missed all football games, 2 basketball scrimmages, and the parent meeting for basketball players.

28. Wade is a starter on the Meadowbrook High School varsity basketball team, whose pre-season began on November 11, 2016, and whose regular season begins December 2, 2016 and ends February 10, 2017.

29. Upon information and belief, the Board's suspension of Plaintiff is preceded by a number of incidents involving Board Members and School Administration. See attached Exhibit E.

## COUNT 1
## (UNEQUAL PROTECTION – 42 U.S.C. 1983)

30. Plaintiff restates and incorporates the above as if fully rewritten.

31. Defendants' conduct in prohibiting Plaintiff from participating in his sons' school activities, where Defendants do not do the same to persons in a situation similar to that of Plaintiff and who have engaged in the same or similar conduct as that of Plaintiff, including Board President Brian Stoney and Superintendent Ryan Caldwell, was wholly arbitrary and vindictive, and was solely or substantially motived by Defendants' spite and ill will towards Plaintiff.

32. Defendants' conduct deprived Plaintiff of his clearly established right to Equal Protection of the Law under the Fourteenth Amendment to the United States Constitution.

33. As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort, and embarrassment, and was deprived of his liberty, and his personal and professional reputations were impaired.

34. Defendants' conduct was performed knowingly, intentionally, maliciously, and with a callous disregard of Plaintiff's constitutional rights.

## COUNT 2
## (UNEQUAL PROTECTION – OHIO CONSTITUTION)

35. Plaintiff restates and incorporates the above as if fully rewritten.

36. Defendants' conduct, as stated in paragraph 26, deprived Plaintiff of his clearly established right to Equal Protection of the Law under Article 1, Section 2, of the Ohio Constitution.

37. As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort, and embarrassment, and was deprived of his liberty, and his personal and professional reputations were impaired.

38. Defendants' conduct was performed knowingly, intentionally, maliciously, and with a callous disregard of Plaintiff's constitutional rights.

## COUNT 3
## (MOTION FOR PRELIMINARY INJUNCTION)

39. Plaintiff restates and incorporates the above as if fully rewritten.

40. Plaintiff is substantially likely to succeed on the merits of this Case, because he has been unequally treated by the Board, given numerous incidents, including the six incidents discussed above, wherein Board President Brian Stoney and/or Superintendent Ryan Caldwell engaged in improper conduct and were not indefinitely suspended from attending or participating in school activities.

41. Plaintiff will suffer irreparable harm if a Preliminary Injunction is not granted, because school activities for the year have already begun, and he has already missed, and will continue to miss, his sons' extracurricular events, including basketball games, as this litigation proceeds. Unless this Court acts now, Plaintiff will miss some or all of his sons' basketball season, which ends in February, 2017, and some or all of his sons' baseball season, which begins in March, 2017, and ends in May, 2017. These are not experiences he can "get back", nor are they experiences that can be readily valued for purposes of determining monetary damages.

42. No third parties will be harmed if a Preliminary Injunction is granted, because Plaintiff has demonstrated and will continue to demonstrate his ability to act responsibly. Plaintiff has never threatened anyone any physical harm or been involved in any physical altercations on School District property. Plaintiff has gone so far as to complete, on his own, the Positive Sport Parenting course. See attached <u>Exhibit F</u>.

43. The public interest will be served by a Preliminary Injunction, because it will mean Plaintiff, a devoted parent who has shown a willingness to act responsibly at school activities, will be able to attend games and support his sons. Moreover, it will mean that the School District will not be able to enforce a suspension which appears to be unequal and arbitrary on its face, until this Case is decided on the merits.

44. Plaintiff is entitled to a Preliminary Injunction enjoining Defendant from prohibiting Plaintiff from attending school activities, until this Case is decided on the merits.

45. Pursuant to Civ.R. 65(B)(2), this Court should combine the Hearing on the Motion for Preliminary Injunction with an expedited Trial on the Merits.

**WHEREFORE**, Plaintiff demands the following relief:

I. As to **Counts 1 and 2**, that this Court issue an Order declaring the Board of Educations dangling, indefinite suspension of Plaintiff from school activities as unconstitutional under the United States and Ohio Constitutions.

II. As to **Count 3**, that this Court grant Plaintiff a Preliminary Injunction enjoining Defendant from prohibiting Plaintiff from attending school activities, until this Case is decided on the merits until this Case is adjudicated on the merits or otherwise resolved.

III. For an award of costs and such other relief as is just and equitable.

Respectfully submitted,

Brent A. Stubbins (0016326)
Grant J. Stubbins (0090768)
STUBBINS, WATSON & BRYAN Co., L.P.A.
59 North Fourth Street
P. O. Box 488
Zanesville, OH 43702-0488
Phone: 740-452-8484
Fax: 740-455-4124
bstubbins@zanesville.law.pro

## VERIFICATION OF COMPLAINT

STATE OF OHIO :
:SS:
COUNTY OF Guernsey :

CORY M. JERLES
Notary Public, State of Ohio
My Comm. Expires Feb. 25, 2020
Recorded in Guernsey County

I, John Urdak, declare under penalty of perjury of the laws of the State of Ohio that I have read this Verified Complaint, and the averments set forth in this Verified Complaint are within my personal knowledge and are true and correct.

_____
John Urdak

Sworn to before me and subscribed in my presence by John Urdak, on November 23, 2016, as being true to the best of his knowledge, information, and belief.

_____
NOTARY PUBLIC

## PRAECIPE FOR SERVICE

TO THE CLERK:

Please make service upon the Defendants by expedited personal service through the Guernsey County Sheriff, at the addresses noted above.

*[signature]*
Brent A. Stubbins (0016326)


EXHIBIT A

# 2016-2017

# Meadowbrook COLTS

## Parent/Guardian/Spectator Athletic Expectations Handbook

"Watching athletic events is a privilege, not a right"

1

## PARENT/GUARDIAN/SPECTATOR STRIKE POLICY

It is clear that parents, guardians and spectators play an influential role in school sports. How you behave in the stands, talk to your son/daughter after games and interact with coaches and officials makes all the difference in every student-athlete's enjoyment of the sport. Sportsmanship is an important concept that we try to instill in all students. To ensure that parents, guardians and spectators take on a positive role to make a memorable experience for everyone at Meadowbrook athletic events, the Rolling Hills Board of Education, in conjunction with the Meadowbrook Athletic Department, has adopted the following guidelines.

**FIVE** Strike Policy for major violations of the Parent/Guardian/Spectator expectations at sporting events.

Major violations that will normally result in a strike include but are not limited to the following:

- aggressively confronting any coach for any reason before, during, or after an athletic contest OR practice (refer to the chain of command for the proper way to communicate with a coach)

- being ejected OR escorted from an athletic contest for any reason by an official, law enforcement, or any school administrator (home or away events)

- ANY action reasonably deemed to be detrimental by a school administrator

1st – Must complete the entire course titled "Positive Sport Parenting" on nfhslearn.com/courses
  • Upon completion of course, print off certificate and provide to athletic administrator. Suspension to all Meadowbrook sporting events will be enforced until course is completed and certificate is turned in.

2nd – TWO weeks suspension from the date of occurrence of violation from attending ALL home athletic events at Meadowbrook for grades 7-12

3rd – THREE months suspension from the date of occurrence of violation from attending ALL home athletic events at Meadowbrook for grades 7-12

4th – ONE calendar YEAR suspension from the date of occurrence of violation from attending ALL home athletic events at Meadowbrook for grades 7-12

5th - Permanent suspension from all home Meadowbrook athletic events

While the above guidelines reflect the normal consequences for objectionable behavior, deviations rarely may be warranted by the particular circumstances surrounding a particular case. Participation in and attendance at extracurricular athletic events is a privilege, not a right. Spectators who engage in offensive behavior not only send the wrong message to young athletes but risk forfeiting their ability to attend.

\*\* Any violation of a suspension as presented will result in an automatic additional strike toward parent, guardian or spectator. \*\*

\*\* Depending on the severity of an incident, steps can be implemented on any level deemed appropriate by Administration. \*\*

\*\* If an incident results in a strike, a written notice and phone call will be made by the Athletic Administrator. \*\*

\*\* Any strike that is implemented to a person will follow that individual from season to season and year to year. \*\*

\*\* Any suspension that is not completely fulfilled during a specific sport season due to the end of the season will be carried over into the following season until the entire suspension is served. \*\*



# Rolling Hills Local School District

Ryan Caldwell, Local Superintendent
Phone: 740-432-5370
Fax: 740-435-8312

P.O. Box 38
Byesville, Ohio 43723

Kandi Fuller, Treasurer
Phone: 740-432-7821
Fax: 740-439-5289

June 30, 2016

Dear Mr. John Urdak:

We are writing to inform you that, for the indefinite future, you will not be permitted to attend any athletic event or other extracurricular activity on property owned by the Rolling Hills Local School District. Your ongoing belligerent and inappropriate conduct—which includes verbal abuse and threats directed at several coaches, the District's Athletic Director, the Superintendent, and even some Board of Education members—leaves us no realistic alternative but to bar your attendance.

While we are sensitive to the interest of a parent in attending events in which a child is participating, and also the interest of the child in having the parent attend, our paramount concern must be for the safety and well-being of staff. While you have a right to your opinions, and to communicate those opinions in an appropriate way, you have no right angrily to attack a public official or employee with profanity and belligerent threats. A public official or employee is simply not your own private punching bag to be abused as you choose. Despite numerous prior warnings, you appear to be either unwilling or incapable of changing your behavior. Accordingly, you are being banned from attending extracurricular activities on District premises.

We would note in this connection that the District Athletic Communication Guide you previously signed specifically stressed that you should not aggressively confront a coach with whom you have issues before or after a contest or practice, since such conduct does not promote the resolution of disputes but, rather, tends to escalate tensions. Your grossly inappropriate comments and attacks have been directed not just toward coaches while doing their jobs, but the Athletic Director and others as well. Ohio law gives school officials the authority to insist that parents and others conduct themselves appropriately while on school property. As Judge Chinnock noted, in upholding a Pike County school district's ban of a student's mother from school activities because of her verbal abuse of a coach, a parent who engages in such behavior forfeits any right he might otherwise have had to attend extracurricular activities.

Much as we regret having to write this letter, your persistent inappropriate conduct and refusal to heed past warnings give us little choice. Should you attempt to attend a District extracurricular activity in the future, you will be treated as a trespasser, and law enforcement authorities will be called. This ban will remain in place until we can credibly be assured that your propensity toward profane outbursts and attacks on others has been curbed and that you can, and will, maintain basic courtesy and civility towards school authorities on a regular and sustained basis.

Sincerely yours,

_____
Board President - Date

_____
Board Vice President - Date

_____
Board Member - Date

_____
Board Member - Date

_____
Board Member - Date



EXHIBIT C

# Rolling Hills Local School District

*Ryan Caldwell, Local Superintendent*
Phone: 740-432-5370
Fax: 740-435-8312

P.O. Box 38
Byesville, Ohio 43723

*Kandi Fuller, Treasurer*
Phone: 740-432-7821
Fax: 740-439-5289

August 5, 2016

John Urdak
11224 Pleasant Road
Pleasant City OH 43772

Dear Mr. Urdak:

At its meeting on August 4, 2016, the Rolling Hills Local School District Board of Education voted to rescind and withdraw the letter dated June 30, 2016 that you received from members of the Board. The Board also authorized me to furnish you with written notice of such action.

Sincerely Yours,

*Kandi Raach*

Kandi Raach, Treasurer

aab

cc: Brent A. Stubbins, Esq.

EXHIBIT D

# Rolling Hills Local School District

Ryan Caldwell, Local Superintendent
Phone: 740-432-5370
Fax: 740-435-8312

P.O. Box 38
Byesville, Ohio 43723

Kandi Fuller, Treasurer
Phone: 740-432-7821
Fax: 740-439-5289

August 12, 2016

**VIA CERTIFIED MAIL**

Dear Mr. Urdak:

    We are writing to inform you that, for the indefinite future, you will not be permitted to attend any athletic event on property owned by the Rolling Hills Local School District. Your ongoing belligerent and inappropriate conduct--which includes verbal abuse and threats directed at several coaches, the District's Athletic Director, the Superintendent, and even some Board of Education members--leaves us no realistic alternative but to bar your attendance.

    While we are sensitive to the interest of a parent in attending events in which a child is participating, and also the interest of the child in having the parent attend, our paramount concern must be for the safety and well-being of staff. While you have a right to your opinions, and to communicate those opinions in an appropriate way, you have no right angrily to attack a public official or employee with profanity and belligerent threats. Despite numerous prior warnings, you appear to be either unwilling or incapable of changing your behavior. Accordingly, you are being banned from attending athletic events on District premises.

    We would note in this connection that the District Athletic Communication Guide you previously signed specifically stressed that you should not aggressively confront a coach with whom you have issues before or after a contest or practice, since such conduct does not promote the resolution of disputes but, rather, tends to escalate tensions. Your grossly inappropriate comments and attacks have been directed not just toward coaches while doing their jobs, but the Athletic Director and others as well. Ohio law gives school officials the authority to insist that parents and others conduct themselves appropriately while on school property. As Judge Chinnock noted, in upholding a Pike County school district's ban of a student's mother from school activities because of her verbal abuse of a coach, a parent who engages in such behavior forfeits any right he might otherwise have had to attend.

# Rolling Hills Local School District

Ryan Caldwell, Local Superintendent
Phone: 740-432-5370
Fax: 740-435-8318

P.O. Box 38
Byesville, Ohio 43723

Kandi Fuller, Treasurer
Phone: 740-432-7821
Fax: 740-439-5289

Much as we regret having to write this letter, your persistent inappropriate conduct and refusal to heed past warnings give us little choice. Should you attempt to attend an athletic event on District premises in the future, you will be treated as a trespasser, and law enforcement authorities will be called. This ban will remain in place until we can credibly be assured that your propensity toward profane outbursts and attacks on others has been curbed and that you can, and will, maintain basic courtesy and civility towards school authorities on a regular and sustained basis.

Sincerely yours,

*[signature]*
Superintendent

*[signature]*
Board President

cc: Brent A. Stubbins, Esq. (via email)



a. <u>2013 Football Field Worksite Incident</u>

In 2013, Brian Stoney was the President of the Rolling Hills Gridiron Club, a booster club for the Meadowbrook High School and Middle School football programs. Mr. Stoney called Plaintiff to ask him for a fuel donation towards the School's football transportation. Plaintiff agreed to donate $1,000.00 worth of fuel.

When Plaintiff delivered the fuel to the School, he observed several Gridiron Club members, members of a club that Brian Stoney was the President of, who were working on the new football field, drinking alcohol.

Sometime later, Buddy Epperson and Tim Mauer, then Board Members, called Plaintiff to ask whether he had seen anyone drinking alcohol at worksite for the new field, and Plaintiff confirmed he had. They asked Plaintiff to testify to that at a Board of Education Meeting, which Plaintiff did.

b. <u>February 5, 2016, Basketball Game Incident</u>

At an away basketball game against Claymont High School, Plaintiff asked Coach Arnold if they could talk about Plaintiff's son being repeatedly benched, which Coach Arnold agreed to do.

After the game and almost everyone had left, Plaintiff went to an area with his wife, Coach Arnold, and Woody Biggs. Almost immediately after they started talking, Sheriff Deputies entered the room and physically hauled Plaintiff out of the building.

The next day, Coach Arnold called Plaintiff and stated he did not know why that happened and that he had told the Deputies that he had agreed to talk to Plaintiff, and advised Jeff Wheeler (Athletic Director) of the same.

c. <u>2016 Summer Basketball League Incident</u>

At a summer basketball league game, Superintendent Caldwell and his 18-year-old foster son sat behind Plaintiff in the bleachers. Caldwell's foster son proceeded to provoke Plaintiff by slapping on his back to get his attention, which Caldwell encouraged. At one point, Caldwell told Plaintiff he was Plaintiff's "boss" and for Plaintiff to "shut up and turn around." Despite the provocation, Plaintiff stayed calm.

After the game, Plaintiff asked Caldwell if they could talk about the incident, to which Caldwell replied, "I'd welcome that". Caldwell advised Plaintiff that he was keeping his foster son from "kicking his ass". Plaintiff left the building, and Plaintiff's wife and Caldwell were asked to leave by Coach Weber. This was witnessed by the opposing team's Coach Weber, as well as Brent Cork, a foreman at Detroit Diesel. Afterwards, Coach Weber told Plaintiff's wife she could not believe that a Superintendent could act the way Caldwell did.

d. August 9, 2016, Football Game Incident

At an away football game against Martins Ferry High School, Meadowbrook Coach Cox went across the field, physically attacked Martins Ferry High School's Principal, and had to be restrained. Coach Cox was required to complete the online Positive Parenting course and miss one football game.

e. October 7, 2016, Football Game Incident

At a home football game against Coshocton High School, Brian Stoney caused the team to incur a 15-yard unsportsmanlike conduct penalty because of his conduct along sidelines. This is based on information and belief, as Plaintiff was not present.

f. October 28, 2016, Football Game Incident

At a home football game against Cambridge High School, where Meadowbrook lost, Brian Stoney refused to shake Cambridge Coach Winland's hand. Winland had previously coached for Meadowbrook. Assistant Coach Gander was a witness to both events.

Page 2 of 2





# Completion Certificate

**John Urdak**

has successfully completed

**Positive Sport Parenting**

11/19/2016 — Date of Completion

Ohio — State of Completion

*Robert B. Gardner*
NFHS Executive Director

2E5AA707874D
Completion Code

This certificate documents course completion, not mastery of content. This course is approved for 1(one) Clock Hour by the NFHS.